[No 2173. Decided July 18, 1896.]

E. M. BARRINGTON et al., Respondents, v. COMMERCIAL DOCK COMPANY, Appellant.

WHARVES — PRIVATE OWNERSHIP — RIGHT OF PUBLIC TO USE.

A wharf belonging to an individual may from its use become in its nature a public wharf.

While Gen. Stat., § 2136, recognizes the right of private ownership in wharves, the section, as a whole cannot be construed to mean that such private property may not be devoted to such use as will, in contemplation of law, make it partake of the nature of a public wharf.

Every vessel has a license to use, for her safety or convenience, any public wharf, on navigable waters, or any private wharf, which by the nature of its use, becomes affected with a public interest, upon the payment of reasonable wharfage charges.

Appeal from Superior Court, Pierce County.— Hon. WILLIAM H. PRITCHARD, Judge.    Affirmed.

*Murry & Scott*, for appellant.

*James F. McElroy*, and *O'Brien & Robertson*, for respondents.

The opinion of the court was delivered by

GORDON, J.—Appellant is the owner and in possession of a wharf and warehouse situated upon a waterway known as the "city waterway" in the city of Tacoma, and located upon a portion of the tide lands which is not by the constitution and laws of the state reserved from sale.   Said wharf and warehouse are not located at the terminus of any street in the city or any public highway in the county.

Appellant holds possession of that portion of tide lands upon which its wharf and warehouse are situated under and by virtue of a lease for the term of twenty years from the Tacoma Land Company.   Said land company has the preference right to purchase the tide land on which the said wharf and warehouse are situated, and has made proper and timely application to the commissioner of public lands for that purpose.

The respondents are owners of the steamer "Cricket," a passenger steamer plying between the cities of Tacoma and Seattle.   They instituted this action in the superior court for Pierce county for the purpose of compelling the appellant to permit them to use appellant's wharf as a landing place for the passengers and baggage carried on their steamer.

The answer of the appellant denied that it was conducting a public wharf and alleged that its wharf was a private one, and that respondents had no right to the use thereof as a landing place for passengers without appellant's permission, which permission it refused to give, alleging further that it had not sufficient room at its wharf to accommodate said steamer without discommoding its regular freight boats.

Upon final hearing the lower court entered a decree perpetually prohibiting and restraining appellant from interfering with or preventing respondents' steamer from landing and discharging its passengers and baggage at and over appellant's wharf upon the payment by respondents of a reasonable compensation for so doing.   The defendant appeals.

In addition to what has been stated, the court found:

" That the said mentioned steamer Cricket at the date of the filing of this complaint, was landing at the docks of the defendant company, at the city of Tacoma, three times a day, and lying there during the night.

" That the dock of the said defendant is situated at and approached to by a bridge constructed from Pacific avenue in the city of Tacoma, to the rear of defendant's dock, which said bridge has been and is open and affords access to the public to the said dock, and that the said dock and the said bridge are not enclosed and that said bridge is in general use by the public as a thoroughfare, and that no restrictions or restraints are made in its use as such thoroughfare.

" That the said Commercial Dock Company transacts a general wharfinger and warehouse business at said dock in the city of Tacoma, and is suitable for the landing of vessels of the steamer Cricket's character, and *has ample and proper facilities* for the accommodation of the said steamer Cricket at the times and

under the circumstances that she now lands and seeks to land.

" That prior to the bringing of this action the defendant agreed with the plaintiffs to furnish a berth and dockage for the steamer Cricket for the landing of passengers at its dock at the city of Tacoma, Washington, for an indefinite time, for the sum of $35 per month."

The court also found that on or about the 1st of October, 1895, appellant notified respondents that it had not sufficient room to accommodate respondents' steamer, and further, that if they continued to land said steamer at appellant's wharf after October 11th, " her lines would be thrown off or cut; " also found:

" That the said dock of the defendant corporation is located on the shore of Commencement Bay, in Pierce county, Washington, and the water at the outer edge of said dock is of a depth of eight feet at low tide, and the same is situated on a waterway approachable from the sea and the waters of Puget Sound.

" That vessels of a similar character and in competing · business with the steamer Cricket, are permitted to land at the dock of the said defendant corporation."

Many of said findings were excepted to by appellant, but, after examining the evidence, we do not feel warranted in disturbing them.

The main contention of appellant is that its wharf is a private wharf, and under the control of the owner, and that it has a right to determine for itself with whom it will do business, and counsel confidently cites § 2136, Gen. Stat. (Vol. 1, Hill's Code), in support of this position. That section is as follows:

"Any person owning land adjoining any navigable waters or watercourse, within or bordering upon this state, may erect upon his own land any wharf or

wharves, and may extend them so far into said waters or watercourses as the convenience of shipping may require; and he may charge for wharfage such rates as shall be reasonable; *provided*, that he shall at all times leave sufficient room in the channel for the ordinary purposes of navigation."

The first part of this section confers a license upon the owner of lands adjoining navigable waters to extend any wharf erected upon his own land into said waters, but the latter part of the section, viz., that " he may charge for wharfage such rates as shall be reasonable," is a limitation merely.   The section as a whole, while it recognizes the right of private ownership in wharves, cannot be construed to mean that such private property may not be devoted to such use as will, in contemplation of law, make it partake of the nature of a public wharf.

Upon this question it was said by the Supreme Court of the United States, in *Dutton v. Strong*, 1 Black, 32, that

" Piers or landing places, and even wharves, may be private, or they may be in their nature public, although the property may be in an individual owner; or, in other words, the owner may have the right to the exclusive enjoyment of the structure, and to exclude all other persons from its use; or he may be under obligation to concede to others the privilege of landing their goods, or of mooring their vessels there, upon the payment of a reasonable compensation as wharfage; and whether they are the one or the other may depend, in case of dispute, upon several considerations, *involving the purpose for which they were built, the uses to which they have been applied*, the place where located, and the nature and character of the structure."

In Gould on Waters (2d ed.), § 119, the author lays

down the proposition, and supports it by a great array of authorities, that

" When wharves belonging to individuals are legally thrown open to the use of the public, they become affected with a public interest, and the wharfage must be reasonable."

The proof in this case shows that numerous steamers landed at appellant's wharf daily, discharging passengers and baggage as well as freight from different ports in the waters of Puget Sound and elsewhere, and it also shows that the appellant receives the sum of twenty-five cents per ton for every ton of freight going out or coming in over said wharf. We think that the language of the court in *Munn v. Illinois*, 94 U. S. 113, is applicable here, viz., that appellant " stands in the very gateway of commerce; and takes toll from all who pass."

*In re The Canal-boat Kate Tremaine*, 5 Ben. 62, it is said :

" A wharf is a necessity of modern navigation, and of navigation alone. The sole object of its erection is to facilitate the transportation of passengers and freight upon navigable waters, . . . every vessel has a license to use, for her safety or convenience, any public wharf on navigable waters, upon paying reasonable wharfage."

We think that in determining the character of appellant's wharf, regard should be had to the use to which it has been devoted rather than its private ownership, and that upon the facts found the position of the appellant cannot be maintained. As well might the proprietor of a stage coach claim the right to discriminate upon the ground that the property employed in his business was private property. The doctrine, if maintained, would tend to promote and

further monopolies, which it is not the policy of our law to favor.

The decree will be affirmed.

HOYT, C. J., and ANDERS, SCOTT and DUNBAR, JJ., concur.